UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAWN NEELD, | ) | CASE NO. 1:11-CV-1168 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE MCHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | AMENDED REPORT & |
| | ) | RECOMMENDATION |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*, is supported by substantial evidence, and therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be VACATED and REMANDED back to the Social Security Administration.

I. INTRODUCTION & PROCEDURAL HISTORY

On August 17, 2006, Plaintiff Dawn Neeld ("Plaintiff" or "Neeld") filed applications for a Period of Disability and Disability Insurance benefits and Supplemental Security Income benefits alleging that she became disabled on March 13, 2005, due to suffering from anxiety disorder, obsessive compulsive disorder, bipolar disorder, post traumatic stress disorder and postpartum depression. (Tr. 63-64, 150-58, 180). Neeld's applications were denied initially and upon reconsideration. (Tr. 63-66). Thereafter, she requested a hearing before an administrative

law judge to contest the denial of her applications. (Tr. 81). The Social Security Administration granted Plaintiff's request and scheduled a hearing. (Tr. 82-83).

On June 8, 2009, an Administrative Law Judge (the "ALJ") convened a hearing to evaluate Plaintiff's applications. (Tr. 56-62). Plaintiff presented at the hearing with her attorney, and a vocational expert also appeared. (*Id.*) However, the ALJ ended the hearing shortly after it began after learning that there were documents missing from the record. (Tr. 60-62). The ALJ informed Neeld that her hearing would be rescheduled so that these documents could be added to the record for review. (Tr. 62).

On January 7, 2010, the ALJ convened a second hearing to continue evaluating Plaintiff's claims for benefits. (Tr. 27-55). Neeld again appeared at this hearing with her attorney, and testified. (Tr. 30- 46). Plaintiff's mother, Ms. Margaret Burnett, also appeared and testified during the proceeding. (Tr. 46-52). Finally, the ALJ heard testimony from vocational expert, Ms. Karen Cole (the "VE"). (Tr. 52-54).

On January 22, 2010, the ALJ issued his decision denying Neeld's applications for benefits. (Tr. 14-23). In his written decision, the ALJ applied the five-step sequential analysis,[1]

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)  If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)  If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)  If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

2

and determined that Plaintiff retained the ability to perform work which existed in significant numbers in the national economy and thus, was not disabled. (*Id*.) Following this ruling, Neeld sought review of the ALJ's decision from the Appeals Council. (Tr. 10). However, on April 26, 2011, the council denied Neeld's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). Plaintiff now seeks judicial review of this denial pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Neeld, born on August 28, 1978, was 26 years old on her alleged onset date. *See* (Tr. 63). Accordingly, at all relevant times she was considered a "younger person" for Social Security purposes. 20 C.F.R. §§ 404.1563(c), 416.963(c). Neeld graduated from high school and attended college for one year. (Tr. 185). She also has experience working as a bartender and as an office coordinator. (Tr. 52, 171-74).

## II.  ALJ's RULING

The ALJ made the following relevant findings of fact and conclusions of law. At step one of the five-step sequential analysis, the ALJ found that Neeld had not engaged in substantial gainful activity since March 13, 2005, Neeld's alleged onset date. (Tr. 16). At step two, the ALJ held that Plaintiff suffered from the following severe impairments: depression, personality disorder, diverticulitis and a foot impairment. (*Id*.) However, at step three, the ALJ ruled that

---

(4)  If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)  Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

none of these impairments, individually or combined, met or equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16-18). Before moving to step four, the ALJ assessed Neeld's residual functional capacity ("RFC") to work. (Tr. 18-21). The ALJ determined that Plaintiff retained the RFC to perform a reduced range of "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 18). Next, at step four of the analysis, the ALJ found that Neeld was unable to perform any of her previous jobs because those positions required greater skills than that which Plaintiff currently possessed. (Tr. 21). Notwithstanding, at the final step in the analysis, the ALJ concluded that Neeld was able to perform other work existing in significant numbers in the national economy, such as that of a cleaner, kitchen worker, laundry worker or vehicle cleaner. (Tr. 21-22). Therefore, the ALJ ruled that Plaintiff was not disabled.

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Plaintiff challenges the ALJ's decision on three grounds. First, Plaintiff submits that the ALJ improperly evaluated her exertional abilities by failing to properly evaluate the opinion of her treating physician. Second, Neeld asserts that the ALJ's assessment of her non-exertional abilities was also erroneous because the ALJ failed to account for limitations which restricted her ability to work. Finally, Neeld contends that remand is necessary because there is new material evidence which warrants consideration by the ALJ.

1. Treating Physician

Neeld maintains that the ALJ failed to properly weigh the opinion of her treating physician, Dr. John Vargo. Dr. Vargo began treating Neeld on November 10, 2005. (Tr. 255). His treatment notes from 2006 show that Neeld complained of problems with swelling in her legs, but that after evaluation, he determined that these problems were unremarkable. (Tr. 256). On September 8, 2007, Plaintiff was involved in a car accident. (Tr. 364). Her left foot was injured and had to be reattached to her body at the ankle. (*Id.*) Following the accident, Dr. Vargo's notes show that Plaintiff regularly experienced pain and swelling in her left foot and ankle, and that he prescribed her strong pain medication for this condition. (Tr. 314-16). For example, in November and December 2007, the doctor's notes show that Plaintiff had marked swelling in her left lower extremity and that her pain was still very bad despite taking medication. (*Id.*) In February 2008, Dr. Vargo ordered additional x-rays of Plaintiff's left foot, but "no new fracture [wa]s seen". (Tr. 379-82).

Throughout 2008, Dr. Vargo consistently noted that Neeld experienced pain, swelling and discoloration in her left foot. (Tr. 304-12). He also indicated that Plaintiff complained of pain in her right foot. (Tr. 304-05, 309-10). However, despite this pain, at times Dr. Vargo also noted that Plaintiff had good strength and sensation in her feet. (Tr. 303, 305). In January 2009, Dr. Vargo prescribed Neeld a TENS[2] unit for her pain. (Tr. 326). In March 2009, he remarked that Neeld had weakness in all planes of motion in her left ankle, as well as discoloration, and that she was unable to perform heel-toe walking. (Tr. 302). Ultimately, he concluded that she was "unable to work at this time" because she "c[ould] not climb, stand or carry for any length of time". (*Id.*) One month later, Dr. Vargo noted that Plaintiff had good pulses, but still

---

[2] TENS stands for transcutaneous electrical nerve stimulation.

experienced chronic left ankle pain. (Tr. 301). His notes from May 2009 indicate that Plaintiff's ankles "look[ed] good" without gross swelling, and that she experienced no pain with palpation. (*Id*.)

It is well-recognized that an ALJ must give special attention to the findings of the claimant's treating sources. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This doctrine, often referred to as the "treating source rule" is a reflection of the notion that physicians who have a long-standing treating relationship with an individual are best equipped to provide a complete picture of the individual's health and treatment history. *Id*.; 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). The treating source rule indicates that opinions from such physicians are entitled to controlling weight if the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence n the case record." *Wilson*, 378 F.3d at 544.

However, even when a treating source's opinion is not entitled to controlling weight, the ALJ must determine how much weight to assign to the opinion by applying specific factors set forth in the governing regulations. These factors include: the length of the treating relationship, the nature and extent of the treatment, how well the physician's opinions are supported by other medical evidence, the extent to which the physician's opinions are consistent with the record as a whole, whether the physician is an expert in the particular field of practice for which he/she is treating the claimant, and any other factor which may support or contradict the opinion. 20 C.F.R. §§ 416.927(d)(2)-(7), 404.1527(d)(2)-(7).

The regulations also require the ALJ to provide "good reasons" for the weight ultimately assigned to the treating physician's opinions. 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2). The good reason requirement serves a two-fold purpose. First, "the explanation lets claimants

7

understand the disposition of their cases, particularly where a claimant knows that h[er] physician has deemed h[er] disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (*quoting Wilson*, 378 F.3d at 544) (internal quotations omitted). Second, "the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* at 243. Remand is appropriate when an ALJ fails to provide adequate reasons explaining the weight assigned to a treating source's opinions, even though "substantial evidence otherwise supports the decision of the Commissioner." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 860 (6th Cir. 2011) (*quoting Wilson*, 378 F.3d at 543-46).

Neeld contends that the ALJ violated the treating source rule by failing to acknowledge all of the ailments noted by Dr. Vargo and Dr. Vargo's finding in March 2009 that Plaintiff was unable to work due to her limitations. The Commissioner concedes that the ALJ did not address Dr. Vargo's statement that Plaintiff was unemployable. However, Defendant submits that this omission was harmless because Dr. Vargo never indicated how long Plaintiff's impairments would prevent her from working. To illustrate, Defendant highlights that Dr. Vargo specifically noted that Neeld was unable to work "at this time." (Tr. 302).

Pursuant to the treating source doctrine, Dr. Vargo's opinions were entitled to controlling weight so long as they were medically supported and were consistent with the other evidence in the record. Yet, such deference only applies to *medical opinions* offered by the treating physician. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010) (*citing* 20 C.F.R. §§ 404.1527(d), 416.927(d)). Statements by a physician indicating that the claimant is

8

"unable to work" are not entitled to any deference because only the Commissioner can render a determination on this issue.  *Turner*, 381 F. App'x at 493; SSR 96-5p.  Nevertheless, "the ALJ may not entirely ignore such an opinion", rather he must still "explain the consideration given to the treating source's opinion."  *Id*. (*citing Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) and SSR 96-5p).

     The ALJ's treatment of Dr. Vargo's opinions was inadequate and necessitates remand.  Dr. Vargo found that Plaintiff suffered from chronic pain, discoloration and coldness in her left ankle, an appreciable amount of pain in her right ankle, and opined that she was unable to work due to her inability to climb, stand or carry.  Despite these findings, the ALJ concluded that Plaintiff could perform "light work" which did not involve climbing or using controls with her left foot.  But, because light work requires standing or walking for approximately six hours each workday, *see* SSR 83-10, the ALJ's RFC inherently conflicted with Dr. Vargo's opinion.

     When an ALJ determines that the opinions of a claimant's treating source are not entitled to controlling weight, the regulations require the ALJ to provide good reasons for the weight attributed to the physician's opinions.  The ALJ did not provide any commentary on his view of Dr. Vargo's findings, particularly those regarding Neeld's ability to climb, stand or carry.[3]  In fact, most of the ALJ's discussion of Neeld's foot impairment referenced an assessment completed by Dr. Amarjeet Nagpaul, the neurologist who examined Plaintiff at Dr. Vargo's request, rather than Dr. Vargo's stated findings.  (Tr. 21, 364-65).  The only records of Dr. Vargo

---

[3] The Court notes that Dr. Vargo's statement rendering Plaintiff unemployable was made *after* Plaintiff's date last insured.  (Tr. 302).  Neeld's insured status terminated on September 30, 2008, but Dr. Vargo did not make this statement until March 2009.  However, because Neeld applied both for Disability Insurance benefits and Supplemental Security Income benefits, the ALJ evaluated Plaintiff's disabled status through the date of his decision, January 22, 2010.  Accordingly, Dr. Vargo's opinion was relevant as it fell within the time period under review by the ALJ.

which the ALJ mentioned were x-ray results from February 2008 showing that Plaintiff had not suffered any new fracture to her left ankle.  (Tr. 21, 379-80).  Other than these two references, the ALJ's opinion is devoid of any analysis of Dr. Vargo's opinions or diagnoses.  This failure alone necessitates remand.  *See Wilson*, 378 F.3d at 545.

Although there are times when an ALJ's failure to give good reasons for the weight given to a treating source's opinions may amount to harmless error, this case does not fall within that exception.  Had the ALJ fully credited Dr. Vargo's findings, he could have concluded that Plaintiff was unable to work.  Dr. Vargo's treatment notes showing problems with both of Neeld's feet, and further indicating that she could not stand or carry for any length of time support Plaintiff's disability claim.  While these notes may not demonstrate that Plaintiff was disabled over the entire period under review, these impairments may have precluded Plaintiff from working for a closed period of time.  Without some explanation from the ALJ as to why he discounted these findings noted by Dr. Vargo, it is impossible for the undersigned to know the intent behind the ALJ's actions.

Contrary to Defendant's assertion, the fact that Dr. Vargo indicated that Neeld could not work "at this time" did not by itself mitigate the ALJ's responsibility to assess Dr. Vargo's opinion.  *See Turner*, 381 F. App'x 492-93.  The Commissioner's argument confuses the claimant's ultimate burden with the ALJ's responsibilities.  While it is true that a claimant will only be entitled to benefits when she has shown that she suffers from an impairment which is expected to last for 12 months or longer, *see* 20 C.F.R. §§ 404.1505(a), 416.905(a), the ALJ's duty to weigh the medical opinion evidence in the record is independent of Plaintiff's burden. The Commissioner has not identified, and neither is the undersigned aware of, any case law indicating that one is dependent upon the other.  Therefore, regardless of the Commissioner's

10

critique of the probative value of Dr. Vargo's opinion, such shortcomings did not eliminate the ALJ's responsibility to consider and weigh the opinion.

The Commissioner's contention that Dr. Vargo's subsequent treatment notes prove that he did not intend to restrict Neeld from working for an extended period of time are also unavailing. The Commissioner notes that just one month after Dr. Vargo opined that Plaintiff could not work, his treatment notes commented that Neeld had good pulses and normal reflexes in her patella.[4] Defendant also highlights Dr. Vargo's comments from May 2009 which indicated that Plaintiff's ankles looked good and had no swelling. But, these notes do not necessarily undermine Dr. Vargo's prior opinion. They do not speak to what degree Plaintiff was restricted from climbing, carrying or standing. For instance, despite these observations, Dr. Vargo also noted that Neeld continued to experience chronic left ankle pain. Thus, these treatment notes do not completely undermine Dr. Vargo's prior opinion.

For the most part, Defendant's criticisms of Dr. Vargo's opinions are nothing more than improper *post hoc* rationalizations. While it may have been proper for the *ALJ* to refer to these treatment notes to explain how he assessed Dr. Vargo's overall opinion, the undersigned cannot say the same for Defendant's attempt to now supply these reasons for the ALJ. Even putting aside the ALJ's failure to address Dr. Vargo's statement that Neeld was unemployable, the ALJ did not explain why he discounted Dr. Vargo's findings that Plaintiff suffered from pain in her right foot, or that she could not stand or carry. Thus, assuming *arguendo*, that the ALJ's RFC properly accounted for Plaintiff's left ankle problems, the ALJ did not explain why he omitted

---

[4] The patella is the knee cap. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, Saunders (30th ed. 2003).

11

these other limitations. Consequently, the ALJ did not adhere to the treating physician rule and this failure was harmful to Neeld.

2. Non-Exertional Restrictions

Although the undersigned finds that Neeld's first assignment of error has merit, for the sake of completeness, the Court will address Plaintiff's remaining claims. Neeld next asserts that the ALJ did not properly incorporate all of her non-exertional impairments into his RFC assessment. First, Neeld contends that her problems with attendance and limitations on her ability to concentrate and tolerate stress, are not accounted for in the ALJ's RFC permitting her to perform simple, routine work. She submits that records from her counselor, Ms. Jennifer Palumbo, at Churchill Counseling Services and Dr. J. Joseph Konieczny, the state agency psychologist who examined her, reflect that she is unable to perform even simple, routine work. Ms. Palumbo opined that Plaintiff had difficulty concentrating, and that she would have poor attendance and poor stress tolerance when working. (Tr. 283, 286). After examination, Dr. Konieczny concluded that Neeld had an adequate ability to concentrate and to understand and follow directions, and a moderate to severe inability to withstand stress and pressure. (Tr. 278).

The ALJ's RFC sufficiently addressed Plaintiff's ability to concentrate and to maintain attendance. Although Ms. Palumbo indicated that Neeld had difficulty in these areas, the state agency psychologist opined that Plaintiff's concentration was adequate and he did not note that Neeld would have any problems with attendance. Because Ms. Palumbo does not fall under the Social Security Administration's definition of an "acceptable medical source", *see* 20 C.F.R. §§ 416.913(a), 404.1513(a); SSR 06-03p, her opinions were not entitled to any special deference. Instead, it was appropriate for the ALJ to rely upon the opinions of Dr. Konieczny, a state agency physician, who was highly skilled in the area of Social Security. *See* 20 C.F.R. §§

416.927(e)(2)(i), 404.1527(e)(2)(i) (noting that state agency physicians are "highly qualified" and "experts in Social Security disability evaluation").

Although the ALJ did not explicitly incorporate Neeld's low stress tolerance into his RFC, this limitation was reflected in the hypothetical question he posed to the VE and in the ALJ's final decision. The ALJ specifically asked the VE to identify positions which were "simple, one- to two-step routine, *low stress* tasks with limited and superficial interaction with supervisors, coworkers and the public." (Tr. 53) (emphasis added). In response, the VE indentified the positions of a cleaner, kitchen worker, laundry worker and vehicle cleaner – the same positions identified by the ALJ in his opinion. (Tr. 22, 53). Accordingly, the ALJ's ultimate ruling inherently contemplated that Neeld could only perform low stress positions. *Cf. Renfro v. Barnhart*, 30 F. App'x 431, 437 (6th Cir. 2002) (finding that the ALJ's hypothetical question which restricted the claimant to "simple tasks that [we]re not fast-paced and that d[id] not require public contact or high levels of interaction with others, did effectively limit . . . the VE to jobs that [we]re low stress").

The undersigned rejects Plaintiff next argument that the ALJ should have adopted limitations recognizing her need to make frequent bowel movements. The ALJ offered a lengthy discussion of Plaintiff's problems with bowel movements and reasonably determined that they did not prevent her from performing normal work activities. The ALJ noted that there was no medical evidence to support Plaintiff's supposed need to wear adult diapers or inability to control her bowels, as alleged by Plaintiff at the hearing. Thus, the ALJ's assessment of Plaintiff's non-exertional limitations is supported by the record.

3. New Evidence

Finally, Neeld contends that her case should be remanded because she has acquired new, material evidence which is likely to change the ALJ's determination of her disabled status. Sentence six of 42 U.S.C. § 405(g) permits a court to remand a case back to the ALJ for consideration of new evidence under certain circumstances. 42 U.S.C. § 405(g) states in pertinent part:

> . . . The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .

42 U.S.C. § 405(g).

The Sixth Circuit has interpreted this statute as creating three requirements to warrant remand for consideration of additional evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711-713 (6th Cir. 1988); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). First, the claimant must submit evidence that is new. "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Elliot v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002). Second, the evidence must be material. To satisfy this burden, the claimant must "demonstrate that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Third, the claimant must show good cause exists for her failure to include the evidence in a prior proceeding. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002). When these three requirements are met, remand is proper.

Neeld identified five sets of documents which she contends requires remand for additional consideration: 1) records from Dr. Vargo dated January 17, 2010 and May 28, 2009

showing that he prescribed Plaintiff TENS units in 2010 and 2011; 2) a record from the Cleveland Clinic from February 2010 noting Neeld's complaints of abdominal pain and loose stools four to five times a day; 3) an operative note from St. Elizabeth Health Center from April 2010 regarding a total colonoscopy procedure Plaintiff underwent on April 7, 2010; 4) a host of records and treatment notes dated between May 2006 and December 2009 from Dr. Mitchell Dalvin, the podiatrist and surgeon who operated on Plaintiff; and 5) a progress note dated January 28, 2010 from Plaintiff's counselor, Ms. Palumbo, at Churchill Counseling Services.

### a. New

To begin, the Court notes, as did the Commissioner, that several of the documents which Plaintiff relies upon are not new. New evidence refers to "evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of the proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 2664 (1990); *Delgado*, 30 F. App'x at 549. The records Plaintiff identifies from Dr. Dalvin were all created and existing prior to Plaintiff's hearing before the ALJ on January 7, 2010. Therefore, this evidence does not constitute as new. Dr. Vargo's notes dated May 2009 are likewise excluded from being considered as new. Accordingly, only Dr. Vargo's latter treatment note, the notes from the Cleveland Clinic, St. Elizabeth Health Center and Ms. Palumbo fall within the definition of *new* evidence.

### b. Good Cause

Neither has Neeld shown good cause for her failure to present the ALJ with the evidence which *was* in existence at the time of her hearing. Plaintiff offered two reasons for her late submission of the evidence now before the Court. First, she contends that some of the evidence did not come into existence until after her hearing. But, this would only explain why Neeld did

15

not present the evidence post-dating the ALJ's opinion. Regarding the remaining evidence, Neeld only offered that the evidence was "unknown to [her] prior counsel" – an explanation which is unsatisfactory.

The undersigned is mindful that the hearing in January 2010 was Plaintiff's second proceeding before the ALJ. The prior hearing convened in June 2009 was dismissed prematurely because there were documents missing from the record. Thus, Plaintiff had additional time – from June 2009 until January 2010 — in which to assess her case and to submit records to the ALJ. Now, Plaintiff asks the Court to remand the case for consideration of additional evidence which presumably could have been presented to the ALJ during the January 2010 hearing.

Because remand is appropriate on other grounds, Neeld will have a third bite at the apple. However, Neeld has not shown good cause for failing to present these arguments to the ALJ. A claimant represented by counsel is presumed to have made her "strongest case for benefits". [Glenn v. Sec'y of Health & Human Servs., 814 F.2d 387, 391 (7th Cir. 1987)](#); [Delgado, 30 F. App'x at 549](#). Here, Plaintiff was represented by counsel and the burden was on her to prove her entitlement to benefits. Although these records may have been unknown by Plaintiff's counsel, Neeld certainly was aware of their existence because she presented to Drs. Dalvin and Vargo on numerous occasions. The undersigned is reluctant to find good cause where, as here, Plaintiff alleges that her counsel had no knowledge of this potential evidence, but fails to explain why her knowledge of the records should be excused or not imputed to her counsel.

### c. Material

With regard to the evidence that Neeld submitted which post-dates the ALJ's decision, it is questionable whether it would have led the ALJ to a different disposition. The fact that Dr. Vargo renewed Plaintiff's prescription for a TENS unit is telling, but its impact is not as moving

because there was already evidence in the record showing that Dr. Vargo had prescribed TENS units for Neeld in the past.[5] The same is true of Ms. Palumbo's notation that Plaintiff was feeling more stressed and depressed. Both of these observations had already been noted in the record.

On the other hand, the records from the Cleveland Clinic and St. Elizabeth Health Center are more compelling because they suggest that Plaintiff's bowel function had further deteriorated. In fact, the postoperative diagnosis from St. Elizabeth Health Center states that Plaintiff had "severe irritable bowel syndrome". (Tr. 622). However, because these records were dated some time after the ALJ's opinion, it is not clear to what degree they are reflective of Plaintiff's condition during the period under review, as opposed to illustrating further deterioration of Plaintiff's existing impairments after the ALJ's ruling was issued. *See Sizemore*, 865 F.2d at 712 ("Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began."); *see also Elliot v. Apfel*, 28 F. App'x 420, 425 (6th Cir. 2002). Because remand is proper on other grounds, it is unnecessary for the undersigned to answer this question. However, on remand, the Court urges the ALJ to address the impact this evidence has upon the ALJ's final ruling on Neeld's disabled status during the relevant period.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the undersigned

---

[5] While this evidence is relevant to Plaintiff's foot condition, which the ALJ must reconsider on remand, it does not by itself carry enough weight to have caused the ALJ to reach a different decision.

recommends that the decision of the Commissioner be VACATED and that the case be REMANDED back to the Social Security Administration.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date:  May 23, 2012.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of the mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).